Ernest Herrera (pro hac vice forthcoming)
Luis L. Lozada (pro hac vice forthcoming)
Mexican American Legal Defense
and Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: eherrera@maldef.org
        llozada@maldef.org

Daniel R. Ortega Jr.
Ortega Law Firm
361 East Coronado Road, Suite 101
Phoenix, AZ 85004-1525
Telephone: (602) 386-4455
Email: danny@ortegalaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Promise Arizona; and Southwest Voter Registration Education Project, | Case No.: |
| Plaintiffs, | **Complaint for Declaratory and Injunctive Relief** |
| vs. | |
| Katie Hobbs, in her official capacity as Arizona Secretary of State; Mark Brnovich, in his official capacity as Arizona Attorney General; John S. Halikowski, in his official capacity as Director of the Arizona Department of Transportation; and the County Recorder Defendants, Apache County Recorder Larry Noble; Cochise County Recorder David W. Stevens; Coconino County Recorder Patty Hansen; Gila County Recorder Sadie Jo Bingham; Graham County Recorder Wendy John; Greenlee County Recorder Sharie Milheiro; La Paz County Recorder Richard Garcia; Maricopa County Recorder Stephen Richer; Mohave County Recorder Kristi Blair; Navajo County Recorder Michael Sample; Pima County Recorder Gabriella Cázares-Kelly; Pinal County Recorder Dana Lewis; Santa Cruz County Recorder Suzanne Sainz; Yavapai County Recorder Michelle M. Burchill; | |

and Yuma County Recorder Richard
Colwell, in their official capacities,

Defendants.

Plaintiffs Promise Arizona and Southwest Voter Registration Education Project (collectively, "Plaintiffs") bring the following allegations, based upon information and belief, against Katie Hobbs, in her official capacity as the Secretary of State of Arizona ("Secretary Hobbs"), Mark Brnovich, in his official capacity as the Attorney General of Arizona ("Attorney General Brnovich"), John S. Halikowski, in his official capacity as Director of the Arizona Department of Transportation ("Director Halikowski"), and the above-captioned County Recorder Defendants, each named in their official capacities (collectively, "Defendants"):

## INTRODUCTION

1.     This action challenges the voter registration cancellation provisions of Arizona House Bill 2243 ("H.B. 2243") and it seeks declaratory and injunctive relief to halt their implementation and enforcement.

2.     Because of unfounded allegations of voter fraud and "illegal aliens" voting in the 2020 Presidential Election, the Arizona legislature enacted H.B. 2243.  This new law imposes a series of additional burdens and restrictions that will have the effect of suppressing Arizona voters, most notably Latino voters, and discouraging—including by criminalizing—the applications of new voters and established voters through a series of mandated documentation, proof of citizenship, and identification and verification of information across varied databases.

3.     Among its many provisions, H.B. 2243 does the following:

(a) "The county recorder shall cancel a registration: […] when the county recorder obtains information pursuant to this section and confirms that the person registered is not a United States citizen."  Arizona Revised Statutes ("A.R.S.") Sec. 16-165(A)(10).

(b) The county recorder must cancel a registration when the county recorder "receives written information from the person registered that the person has a change of address outside of the county" including when the county

- 1 -

COMPLAINT

recorder receives a form from the person confirming that they are not an Arizona resident, or a summary report from the jury commissioner or jury manager that the person is not an Arizona resident.  A.R.S. Sec. 16-165(A)(9).

(c) The Arizona Secretary of State will compare every month "the statewide voter registration database to the driver license database maintained by the Department of Transportation" and afterward "shall notify the appropriate county recorder if a person who is registered to vote in that county has changed the person's residence address or is not a United States citizen." A.R.S. Sec. 16-165(F).

(d) The county recorder will, to the extent practicable, compare every month "the county's voter registration database to the Social Security Administration database." A.R.S. Sec. 16-165(G).

(e) The county recorder will, to the extent practicable, compare every month "persons who are registered to vote in that county and who the county recorder has reason to believe are not United States citizens and persons who are registered to vote without satisfactory evidence of citizenship and persons who are registered to vote without satisfactory evidence of citizenship [...] with the Systematic Alien Verification for Entitlements Program." A.R.S. Sec. 16-165(H).

(f) The county recorder will "compare the Electronic Verification of Vital Events System maintained by a National Association for Public Health Statistics and Information Systems, if accessible, with the information on the person's voter registration file" concerning "persons who are registered to vote without satisfactory evidence of citizenship." A.R.S. Sec. 16-165(I).

- 2 -

1    (g) The county recorder will, to the extent practicable, review every month
2        "relevant city, town, county, state and federal databases to which the
3        county recorder has access to confirm information obtained that requires
4        cancellation of registration pursuant to this section."  A.R.S. Sec. 16-
5        165(J).

6    4.    Governor Douglas Ducey signed this legislation on the pretextual grounds
7 that it was necessary to prevent voter fraud and maintain election integrity.  However, there
8 is no evidence that voter fraud occurs in Arizona, except for a few isolated cases, that would
9 change the outcome of election results, such as the 2020 Presidential Election, that could
10 not be addresses by Arizona's pre-existing processes and procedures.  Therefore, the
11 additional burdens and restrictions on voting and removal from the voter rolls contained in
12 H.B. 2243 are not justified by invoking unspecified and unproven claims of voter fraud.

13    5.    As described below, H.B. 2243 is a reaction to Arizona's changing electorate,
14 which is now more racially diverse and younger than before.  The Arizona legislature
15 responded to the changing demographics and unfounded allegations of voter fraud by
16 imposing voting requirements in the name of election integrity that will make it harder for
17 Arizonans, especially Latino voters, to participate in their civic responsibility.

18    6.    H.B. 2243's limitations violate federal law and will cause irreparable harm
19 to Plaintiffs and the community they serve.  H.B. 2243 creates an undue burden on the right
20 to vote in violation of the First and Fourteenth Amendments.  The provisions of verifying
21 information through various databases amount to intentional race, national origin, and
22 alienage discrimination in violation of the Fourteenth Amendment.  The provisions
23 providing that the county recorder may cancel a registration based on subjective grounds
24 are void for vagueness and denial of due process.  H.B. 2243 also contains provisions that
25 amount to intentional race discrimination in voting in violation of the Fifteenth
26 Amendment.  The provisions that allow the removal of individuals from the voter rolls
27 constitute a violation of Section 8 of the National Voter Registration Act of 1993.

28
COMPLAINT

7.     Plaintiffs have no plain, speedy, or adequate remedy at law other than the relief requested in this complaint.  Unless enjoined by this Court, Arizona's laws requiring the purging of voter rolls will continue to burden voting and voter registration impermissibly across the state.

## JURISDICTION AND VENUE

8.     This Court has federal subject matter jurisdiction based on 28 U.S.C. § 1343(a)(3) and (4); and 28 U.S.C. § 1331 for causes of action arising under 42 U.S.C. §§ 1971 and 1973, 42 U.S.C. § 1973gg-4, and 42 U.S.C. § 2000d.

9.     This Court has jurisdiction for Plaintiffs' constitutional and federal statutory claims under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under the color of state law, of their rights under the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution.

10.     This Court has jurisdiction to grant Plaintiffs' claims for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

11.     This Court has jurisdiction for Plaintiffs' claims for attorneys' fees and costs under 42 U.S.C. § 1988, 52 U.S.C. § 20510(c), and 52 U.S.C. § 10310(e).

12.     This Court has personal jurisdiction over the Secretary of State; Defendant Hobbs is sued in her official capacity and resides in the State of Arizona.

13.     This Court has personal jurisdiction over the Attorney General; Defendant Brnovich is sued in his official capacity and resides in the State of Arizona.

14.     This Court has personal jurisdiction over the Director of the Department of Transportation; Defendant Halikowski is sued in his official capacity and resides in the State of Arizona.

15.     This Court has personal jurisdiction over the County Recorder Defendants; they are sued in their official capacities and reside in the State of Arizona.

COMPLAINT

16.     Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district and division.

**PARTIES**

**Plaintiffs**

17.     Plaintiff Promise Arizona ("PAZ") is a non-profit and membership organization committed to improving the participation of Latino and other minority communities across the State of Arizona in the democratic process, through English-language and citizenship classes, voter registration, voter education, and voter participation activities.  Since starting its voter registration program over a decade ago, PAZ has registered over 100,000 Latino and minority voters in Arizona.  PAZ conducts its voter registration activities at community-based sites such as school campuses, community colleges, and churches.  Because H.B. 2243 has limited the number of persons that PAZ can register to vote and impaired the ability of PAZ to conduct voter registration, voter turnout, and civic participation, PAZ has been injured by H.B. 2243. Additionally, PAZ must use its limited resources to hire and train staff concerning how H.B. 2243 impacts voter registration by canceling voter registrations and purging registered voters from the voter rolls, as well as media outreach to inform its community members about the prospect that new voter and registered voters will be ineligible to vote because of H.B. 2243.

18.     Plaintiff Southwest Voter Registration Education Project ("SVREP") is a non-profit and non-partisan organization committed to improving the participation of Latino and other minority communities across the United States in the democratic process, through voter registration, voter education, and voter participation activities. Since its founding in 1974, SVREP has registered 2.7 million Latinos, trained 150,000 Latino leaders, and won 210 voting rights lawsuits.  SVREP conducts its voter registration activities at community-based sites such as school campuses, malls, and fairs

COMPLAINT

in Arizona and other states.  Because H.B. 2243 has limited the number of persons that SVREP can register to vote and impaired the ability of SVREP to conduct voter registration, voter turnout, and civic participation, SVREP has been injured by H.B. 2243. Additionally, SVREP must use its limited resources to hire and train staff concerning how H.B. 2243 impacts voter registration by canceling voter registrations and purging registered voters from the voter rolls, as well as media outreach to inform its community members about the prospect that new voter and registered voters will be ineligible to vote because of H.B. 2243.

**Defendants**

19.    Defendant Katie Hobbs is sued in her official capacity as Arizona Secretary of State for actions taken under color of state law.  Secretary Hobbs is the chief election officer of the State of Arizona.  In that capacity, she is responsible for the implementation of H.B. 2243 relating to the maintenance of the statewide voter registration database, comparing the information in the voter registration database with the information in other prescribed databases, and notifying the local county recorder that a registered voter is suspected of not being a U.S. citizen or Arizona resident.

20.    Defendant Mark Brnovich is sued in his official capacity as Arizona Attorney General for actions taken under color of state law.  Attorney General Brnovich is the chief legal officer of the State of Arizona.  In that capacity, he is responsible for the enforcement of H.B. 2243 relating to the prosecution of registered voters who are not United States citizens.

21.    Defendant John S. Halikowski is sued in his official capacity as Director of the Arizona Department of Transportation for actions taken under color of state law. Director Halikowski leads the agency responsible for planning, building and maintaining the state's multimodal transportation system, proving motor vehicle title, registration and driver license services.  In that capacity, he is responsible for the implementation of H.B.

2243 relating to furnishing every month to the Secretary of State a list of persons who have a driver license or other equivalent identification from another state.

22.     Defendant County Recorders are sued in their official capacities as Arizona County Recorders for actions taken under color of state law.  They are the chief election officer at the local level in the State of Arizona.  In that capacity, they are responsible for the implementation and enforcement of H.B. 2243 relating to verification of a voter's citizenship status, processing voter registration forms, and rejecting a voter's registration form if the county recorder cannot confirm a voter's citizenship status through governmental databases.  Consequently, the County Recorder Defendants listed below are sued in their official capacities:

(a) Defendant Larry Noble is the Apache County Recorder.

(b) David W. Stevens is the Cochise County Recorder.

(c) Patty Hansen is the Coconino County Recorder.

(d) Sadie Jo Bingham is the Gila County Recorder.

(e) Wendy John is the Graham County Recorder.

(f)  Sharie Milheiro is the Greenlee County Recorder.

(g) Richard Garcia is the La Paz County Recorder.

(h) Stephen Richer is the Maricopa County Recorder.

(i)  Kristi Blair is the Mohave County Recorder.

(j)  Michael Sample is the Navajo County Recorder.

(k) Gabriella Cázares-Kelly is the Pima County Recorder.

(l)  Dana Lewis is the Pinal County Recorder.

(m) Suzanne Sainz is the Santa Cruz County Recorder.

(n) Michelle M. Burchill is the Yavapai County Recorder.

(o) Richard Colwell is the Yuma County Recorder.

## **STATEMENT OF FACTS**

**Introduction**

COMPLAINT

23.     Arizona has a long and troubled history of discrimination and voter suppression.   In 1909, Arizona passed a law, lasting for over 60 years, that required voters to pass an English literacy test in order to register to vote.  This was a coordinated effort to block the "ignorant Mexican vote" to keep Arizona a majority white-voting state.[1]  This feature of Arizona's history was recognized in *Democratic National Committee v. Hobbs*, 948 F.3d 989 (Supreme Court did not overturned factual findings of the Ninth Circuit), where the Ninth Circuit Court of Appeals found that Arizona has a "long history of race-based voting discrimination[.]"[2]  This history also includes Arizona's defense of its literacy test requirement until 1970.  *See Oregon v. Mitchell*, 400 U.S. 112, 132 (1970).

24.     Arizona also has a history of official discrimination against Latinos in other areas such as education.  *See Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1141 (9th Cir. 2011) (Tucson school district continued failure to achieve unitary status since entry of 1978 desegregation orders pertaining to Latino and Black students); *see also Gonzales v. Sheely*, 96 F. Supp. 1004, 1009 (D. Ariz. 1951) (finding racial segregation of students of Mexican descent in schools in Maricopa County).

25.     Significant socioeconomic disparities in the areas of health, education, and employment persist between Latinos and non-Latinos in Arizona.

26.     Compared to over a century ago, the demographics of Arizona have greatly shifted to empower the growing Latino population.   In the 2020 elections, the eligible Latino voting population accounted for 23.6% of eligible voters in Arizona.[3]  In Maricopa

---

[1] Mira Ortegon, *Latino Communities on the Front Lines of Voter Suppression*, Brennan Center for Justice (January 14, 2022), https://www.brennancenter.org/our-work/analysis-opinion/latino-communities-front-lines-voter-suppression.
[2] *DNC*, 948 F.3d at 1041, *overruled on legal grounds by Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021).
[3] Mapping the 2020 Latino Electorate, Pew Research Center, https://www.pewresearch.org/hispanic/interactives/mapping-the-latino-electorate/iframe/ (accessed September 14, 2022).

- 8 -

COMPLAINT

County, which accounts for 60% of Arizona's vote, one-third of residents are Latino.[4]
Additionally, 45% of Arizona students in grades pre-K through 12 are Latino.[5] These
demographic changes in Arizona favor the Latino population in the coming years; however,
like over a century ago, Arizona continues to suppress and disenfranchise its Latino
population based on fear and xenophobia.

27.     Following the 2020 Presidential Election, many elected officials from
Arizona repeated former President Donald Trump's unsubstantiated claims of widespread
voter fraud, illegal immigrants casting ballots, and suspicious mail-in ballots at drop box
locations.

28.     On February 7, 2022, State Representative Mark Finchem introduced HCR
2033, which called for the elections of Maricopa, Pima, and Yum Counties to be set aside
and the decertification of the elections results based on alleged illegal acts that took place
during the 2020 election.[6]  Finchem is currently running as the Arizona Republican
candidate for Secretary of State, a position that is responsible for the certification of
election results in Arizona, and has said that President Joseph Biden did not win Arizona
during the 2020 election.[7]  If elected as Arizona Secretary of State, Finchem has vowed to
decertify the 2020 Presidential Election.[8]

---

[4] Courtney Vinopal, *How Mexican American Voters Helped Turn Arizona Blue*, PBS News Hour
(November 4, 2020), https://www.pbs.org/newshour/politics/how-mexican-american-voters-helped-turn-arizona-blue.
[5] Mia Marquez *et al.*, *Arizona's Growing Latino Population is Underrepresented Among Teachers*,
Cronkite News Arizona PBS (April 25, 2022), https://cronkitenews.azpbs.org/2022/04/25/arizona-latino-hispanic-population-underrepresented-teachers-education/.
[6] Representative Finchem Introduces Resolution to Set Aside and Decertify Three 2020 County Elections,
Arizona House of Representatives (February 7, 2022),
https://www.azleg.gov/press/house/55LEG/2R/220207FINCHEMHCR2033.pdf.
[7] Adam Edelman, *Election Denier Mark Finchem Wins Arizona GOP Secretary of State Primary*, NBC
News Projects, NBC News (August 3, 2022), https://www.nbcnews.com/politics/2022-election/election-denier-mark-finchem-wins-arizona-gop-secretary-state-primary-rcna40651.
[8] Elias Weiss, *Leaked Emails: How Mark Finchem Went from State Lawmaker to Conspiracy Czar*,
Phoenix New Times (July 29, 2022), https://www.phoenixnewtimes.com/news/how-mark-finchem-went-from-state-lawmaker-to-conspiracy-czar-14118341.

- 9 -

COMPLAINT

29.     Arizona State Senator Wendy Rogers also claimed that the 2020 election was fraudulent.    Rogers has claimed that "[d]ead people are voting, illegal immigrants are voting, non-residents are voting.  Every illegal corrupted vote takes away my vote and your vote and everyone's constituent's vote."[9]

30.     In April 2022, echoing the "great replacement" conspiracy theory, Arizona Senate candidate Blake Masters accused Democrats of attempting to flood the United States with millions of immigrants "to change the demographics of our country."[10] Similarly, on May 14, 2022, Masters tweeted that "Democrats want open borders so they can bring in and amnesty **tens of millions** of illegal aliens—that's their electoral strategy.  Not on my watch."[11]

31.     The above-mentioned examples illustrate that many elected officials and current candidates subscribe to the belief that the 2020 election was stolen because of illegal immigrants or other nefarious actors despite the multitude of evidence to the contrary.  According to the Heritage Foundation's database of election fraud cases, since 2020, there have been only seven individuals convicted of fraudulent use of absentee ballots in Arizona, despite mail ballots being the predominant method of voting in the state.[12]   Similarly, Arizona county election officials identified fewer than 200 cases of potential voter fraud out of more than 3.4 million ballots cast during the 2020 election.[13]

---

[9] Gloria Rebecca Gomez, *Republican Lawmakers Move to Clean Up Voter Rolls, Arizona Mirror* (February 11, 2022), https://www.azmirror.com/2022/02/11/republican-lawmakers-move-to-tighten-voter-registration-laws/.

[10] Steve Peoples, *Republican Senate Candidates Promote "Replacement Theory," AP News* (May 17, 2022), https://apnews.com/article/2022-midterm-elections-republicans-replacement-theory-00800c89953aa58e746988ed591e7ed9.

[11] Jon Greenberg *et al.*, *Fact Checking Arizona's Blake Masters' Claim of Open Borders and Democratic Amnesty Plans*, Politifact (May 16, 2022), https://www.politifact.com/factchecks/2022/may/16/blake-masters/factchecking-arizonas-blake-masters-claim-open-bor/.

[12] Election Fraud Cases, The Heritage Foundation, https://www.heritage.org/voterfraud/search?state=AZ&combine=&year=&case_type=All&fraud_type=All&page=0 (accessed September 14, 2022).

[13] Bob Christie et al., *Few AZ Voters Fraud Cases, Discrediting Trump's Claims*, AP News (July 16, 2021), https://apnews.com/article/business-government-and-politics-arizona-election-2020-e6158cd1b0c6442716064e6791b4c6fc.

COMPLAINT

32.     With this backdrop, the Arizona legislature moved to pass legislation to make it harder for Latinos to vote in the name of election integrity.

**Arizona House Bill 2617**

33.     On May 25, 2022, the Arizona legislature passed House Bill 2617 ("H.B. 2617").  The proposed legislation sought to amend Arizona Revised Statues Sections 16-165 and 21-314 concerning voter registration and cancellations, and jury questionnaires. H.B. 2617 contained provisions that, among other things, required the county recorder to verify a person's information against state and federal databases to confirm their residency and citizenship status.

34.     Most notably, as amended by Section 1 of H.B. 2617, A.R.S. Sec. 16-165(A)(10) provided that "[t]he county recorder shall cancel a registration: […] when the county recorder receives and confirms information that the person registered: (a) is not a United States citizen […] (b) has been issued a driver license or the equivalent of an Arizona nonoperating identification license from another state […] (c) is otherwise not a qualified elector[.]"

35.     On May 26, 2022, a coalition of organizations headed by the Arizona Free Enterprise Club sent a letter in support of H.B. 2617 to Arizona Governor Douglas Ducey. In the letter, the coalition encouraged Governor Ducey to sign H.B. 2617 in order to preserve election integrity and remove ineligible voters from the voter rolls:

> HB 2617 establishes a process to ensure just that.  It requires regular checks of several databases containing information pertinent to voter qualifications and then requires, when a county recorder has confirmed that an elector is no longer eligible, cancellation of the registration.
> . . .
> Ineligible individuals on the voter rolls are often not the result of fraud. Instead, it is due to a lack of processes that ensure routine maintenance.  It is also in large part a result of voters moving, and with the many burdens that come with that, they do not get around to notifying the state or county from which they moved that they no

longer reside there.[14]

36.    On May 27, 2022, Governor Ducey vetoed H.B. 2617.   In the letter explaining the veto of H.B. 2617, Governor Ducey stated that H.B. 2617 failed to provide "necessary safeguards" to "protect the vote of any Arizonian who is eligible and lawfully registered."[15]

37.    Governor Ducey explained that H.B. 2617 contained provisions that required county recorders to cancel voter registrations if they received information that the voter is not a qualified elector was vague and ambiguous, which could result in "bad actors" falsely accusing someone of not being eligible to vote in Arizona:

> H.B. 2617 requires a county recorder to cancel the voter registration of a voter if the recorder receives information that provides the basis for determining that the person is not a qualified elector.  The implementation of this provision is vague and lacks any guidance on how a county recorder would confirm such a determination.  Our lawfully registered voters deserve to know that their right to vote will not be disturbed without sufficient due process.  This provision leaves our election system vulnerable to bad actors who could seek to falsely allege a voter is not a qualified elector.[16]

38.    In addition, Governor Ducey proffered that H.B. 2617 contained provisions that required county recorders to investigate and potentially remove voters from the voter rolls based on subjective criteria, such as the determination of residency:

> There are certain aspects of being a qualified elector that are objectively quantifiable and identifiable, such as age and citizenship status; but, the determination of residency can be a fact specific inquiry.  The subjectivity of this provision, as well as a lack of guardrails against false claims, included in H.B. 2617 leaves voter registration susceptible to being canceled based on fiction rather than fact.[17]

**Arizona House Bill 2243**

---

[14] Coalition of Organization Letter to Governor Douglas A. Ducey re House Bill 2617 (May 26, 2022), https://electiontransparency.org/wp-content/uploads/sites/9/2022/05/HB2617-Coalition-Letter.pdf.
[15] Governor Douglas A. Ducey Letter re House Bill 2617 (May 27, 2022), https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf.
[16] *Id.*
[17] *Id.*

COMPLAINT

39.     Following the veto of H.B. 2617, the Arizona legislature amended H.B. 2243 to include nearly identical language from H.B. 2617, as well as new provisions purportedly added to address Governor Ducey's concerns of due process and vagueness.

40.     On June 22, 2022, during an Arizona Senate floor session regarding H.B. 2243, Arizona State Senator Warren Petersen noted that H.B. 2243 is an amended version of H.B. 2617 with additional notice, but that it was "otherwise identical" to H.B. 2617.[18]

41.     During that same Arizona Senate floor session, Arizona State Senator Martin Quezada raised the issue that H.B. 2243 did not go through the rules committee process. State Senator Quezada also noted that H.B. 2243 would violate the Arizona Voter Protection Act because it was not passed with a three-fourths majority.

42.     The Arizona Voter Protection Act of 1998 prohibits the state legislature from amending or repealing any voter-approved ballot measures and referendums; the legislature must have a three-fourths vote to make any changes to voter-protected laws.[19]

43.     On June 23, 2022, the Arizona legislature passed H.B. 2243 based on a majority vote in both legislative chambers.

44.     After H.B. 2243 was passed in the Arizona legislature, Jennifer Marson, the executive director of the Arizona Association of Counties, warned that "[i]f signed, this bill is an illegal enactment"[20] because H.B. 2243 was passed by a simple majority in both chambers, in violation of the Arizona Constitution.   She also asserted that H.B. 2243 "forces County Recorders to violate voter protected statutes."[21]

---

[18] https://www.azleg.gov/videoplayer/?eventID=2022061052&startStreamAt=7888.
[19] Arizona Voter Protection Act of 1998,
https://apps.azsos.gov/election/1998/Info/PubPamphlet/prop105.html (accessed September 14, 2022).
[20] Rachel Leingang, *Voting Advocates Fear New Law Could Disenfranchise Some Naturalized Citizens*, Arizona Mirror (July 14, 2022), https://www.azmirror.com/2022/07/14/voting-advocates-fear-new-law-could-disenfranchise-some-naturalized-citizens/.
[21] *Id.*

COMPLAINT

45.     On July 6, 2022, Governor Ducey signed H.B. 2243 into law.  H.B. 2243 requires a county recorder to cancel the voter registration of a person when the county recorder receives and confirms information that the person: (1) is not a U.S. citizen; (2) is not an Arizona resident; or (3) has been issued a driver license or nonoperating license in another state.

46.     H.B. 2243 further requires that the Secretary of State and county recorders compare the voter registration database with prescribed databases every month for registered voters who are suspected non-U.S. citizens or non-Arizona residents.

47.     The difference between H.B. 2617 and H.B. 2243 is that H.B. 2243 requires the county recorder to "obtain" rather than "receive and confirm" information when determining whether a person is not eligible to vote.

48.     H.B. 2243 represents the State of Arizona's latest attempt to restrict Latino voters' fundamental right to vote by removing the names of new and registered voters from the voter rolls.

49.     There is no evidence of wide-spread voter fraud that threatens the integrity of elections in Arizona.  H.B. 2243 seeks to remove registered voters from the voter rolls who are suspected to be non-U.S. citizens or non-Arizona residents.

50.     H.B. 2243's purging of the voter rolls violates federal law and will cause irreparable harm to Plaintiffs.  Thus, Plaintiffs respectfully request that the Court declare that the challenged provisions of H.B. 2243 are unlawful and enjoin Defendants from enforcing the challenged provisions.

**Residency Requirements**

51.     Each Arizona resident is qualified to register to vote if they meet certain criteria, including, among other things, having been a resident of Arizona for 29 days preceding an election.

52.     A resident is defined as an individual who has actual physical presence in Arizona, or for the purposes of a political subdivision actual physical presence in the political subdivision, combined with an intent to remain.  A.R.S. § 16-101.

53.     The state voter registration form must include certain identifying information of the registrant and specified statements, including a statement that the registrant is an Arizona resident and resident of the county in which the registrant is registering.  A.R.S. § 16-152.

**Causes of Cancellation**

54.     Section 2 of H.B. 2243 amends Section 16-165 of the Arizona Revised Statutes in  order to add subsection (A)(9) which provides that the county recorder shall cancel a voter registration when the recorder receives written information from the person registered that they have a change of address outside of the county, as well as when the recorder receives a form from the person that they are not a resident of Arizona; or summary report from the jury commissioner or jury manager that the person registered is not a resident of the county.  However, before the recorder cancels the registration, the recorder must send notice to the person requesting that they confirm, by signing under penalty of perjury, that they are a resident of the county and that failure to return the form within 35 days will result in cancellation.

55.     Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (A)(10) which provides that the county recorder shall cancel a voter registration when the recorder receives and confirms information that the person registered is not a United States citizen, such as receiving a summary report from the jury commissioner or jury manager.  However, before the recorder cancels the registration, the recorder must send notice to the person that their registration will be canceled unless they provide satisfactory evidence of citizenship within 35 days, and if there is a cancellation, the recorder will notify the County Attorney and Attorney General to open a possible investigation.

56.    Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (F) which provides that the Secretary of State will compare the statewide voter registration database to the driver license database maintained by the Arizona Department of Transportation every month.  The Secretary of State will notify the local county recorder if a registered person has changed their address "or is not a United States citizen."

57.    Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (G) which provides that, to the extent practicable, the county recorder will each month "compare the county's voter registration database to the Social Security Administration database."

58.    Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (H) which provides that, to the extent practicable, the county recorder will compare every month registered persons with who the recorder "has reason to believe are not United States citizens and persons who are registered to vote without satisfactory evidence of citizenship [. . .] with the Systematic Alien Verification for Entitlement Program."

59.    Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (I) which provides that, for persons without satisfactory evidence of citizenship, the county recorder will "compare the public health statistics and information systems, if accessible, with the information on the person's registration file."

60.    Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (J) which provides that, to the extent practicable, the county recorder will "review relevant city, town, county, state, and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations pursuant to this section."

COMPLAINT

61.     Section 2 of H.B. 2243 further amends Section 16-165 of the Arizona Revised Statutes in order to add subsection (K) which provides that, after canceling a registration, the county recorder will send notice to the person that their registration has been canceled, reasons for the cancellation, qualification of electors, and instructions on registering to vote.

**Effects of Registration Cancellations and Voter Purges**

62.     Arizona's claims of voter fraud and support for election integrity are pretexts for their actual purpose in enacting H.B. 2243, namely to target registered Latino voters, rather than native-born and white voters, and disenfranchise registered Latino voters by removing them from the voter rolls.  H.B. 2243 discriminates based on race, national origin and alienage, and creates an undue burden on Latino citizens who seek to exercise their fundamental right to vote.

63.     As a result of the new residency requirements, causes of cancellation, and voter purges imposed by H.B. 2243, Plaintiffs are impeded in their ability to conduct community-based voter registrations and civic participation activities.  Plaintiffs will have to train its staff on the new regulations and educate potential voters, who often do not have sufficient English proficiency, on the various reasons why their registration application may be canceled, and inform already registered voters that they may be removed from the voter rolls and prohibited from voting.

64.     Naturalized U.S. citizens who are Latinos are more likely to have limited English proficiency and therefore be less likely to understand the new causes of cancellation imposed by H.B. 2243, and less likely to possess the forms of residency and citizenship documentary required under H.B. 2243 to avoid being purge from the voter rolls.  As a result, a significant number of Latinos that have registered to vote will be denied the right to vote.

65.     Because Latinos comprise a large proportion of naturalized citizens in Arizona, the creation of lists of suspected voters and notices requiring satisfactory evidence

COMPLAINT

of citizenship imposed by H.B. 2243 have a disproportionately negative impact on voter registrations by Latino voters.  Specifically, at the time of the 2020 Presidential Election, Latinos accounted for approximately 23.6% of U.S. citizens of voting age in Arizona.[22]  In Maricopa County, which accounts for 60% of Arizona's vote, nearly one-third of residents are Latino.[23]  Latinos make up 59.9% of Arizona's foreign-born population, and naturalized U.S. citizens comprise 45.2% of Arizona's total foreign-born population.  The percentage of U.S. citizen voting-age Latinos in Arizona who are naturalized is approximately 17.7%, whereas the percentage of non-Latino White U.S. citizens of voting age in Arizona who are naturalized is 3.1%.  Latinos make up 50.6% of all naturalized U.S. citizens of voting age in Arizona.  As such, H.B. 2243 will have a disparate impact on the growing Latino population in the next few years, particularly as more Latinos become U.S. citizens or reach voting age.

66.     Section 2 of H.B. 2243 addresses voter registration cancellations and voter purges.  Under A.R.S. Secs. 16-165(A)(9) and (10), the county recorder must cancel a voter registration when the recorder receives: (1) a form from the person on which the person has confirmed that they are not a resident of the state; (2) a summary report from the jury commissioner or jury manager indicating that the person has stated that they are not a county resident; or (3) information and confirmation that the person is not a United States citizen.  Here, there are no details regarding how county recorders will receive information that a person is not a United States citizen, how to confirm such information, and what information establishes that a person is not a United States citizen.  It is also unclear as to what type of form would demonstrate that a person is not a resident of the state.  As a result,

---

[22] American Community Survey 2016-2020 5-Year Estimates – Citizen Voting Age Population Special Tabulation, Census Bureau (March 17, 2022), https://www.census.gov/programs-surveys/decennial-census/about/voting-rights/cvap.html.
[23] United States Census Data, 2020 Census, https://data.census.gov/cedsci/table?g=0500000US04013&tid=DECENNIALPL2020.P2 (accessed September 1, 2022).

A.R.S. Secs. 16-165(A)(9) and (10) are designed to target U.S. citizens who have registered to vote and have moved into Arizona and U.S. citizens who do not have a permanent residence in Arizona.  Further, Latino voters, many of whom have hyphenated or accented surnames, will be arbitrarily removed from the voter rolls as a result of errors and the subjective decisions of county recorders.

67.     A.R.S. Secs. 16-165(A)(9) and (10) further require that a county recorder, before canceling a voter registration, must send notice to the person requesting the person: (1) confirm that the person is a county resident and is not knowingly registered to vote in another county or state by signing under penalty of perjury; or (2) provide satisfactory evidence of citizenship.  In both cases, the person has 35 days to provide the required information otherwise their voter registration will be canceled.  Here, A.R.S. Secs. 16-165(A)(9) and (10) fail to provide notice and procedural protections.  Specifically, a person has 35 days to respond to the notice.  Depending on the information requested, the person must either collect the necessary documentation listed in the notice by obtaining copies of their birth certificate, passport, or naturalized certificate to meet the satisfactory evidence of citizenship requirement; or return the signed form under penalty of perjury confirming that they are a county resident in the allotted time.  Because of the short response period prescribed in A.R.S. Secs. 16-165(A)(9) and (10), naturalized Latino voters will face an undue burden in collecting the necessary documentation from governmental offices, based on limited English proficiency, and will most likely be removed from the voter rolls as a consequence.  Additionally, Plaintiffs will have to spend more organizational resources on helping individuals whom they helped to register respond to such notices.

68.     A.R.S. Sec. 16-165(F) requires the Secretary of State, each month, to compare the statewide voter registration database to the driver license database maintained by the Arizona Department of Transportation.  The Secretary of State must further notify the appropriate county recorder if a person who is registered to vote in that county has changed the person's residence address is not a United States citizen.  Here, A.R.S. Sec.

16-165(F) fails to provide sufficient detail regarding the voter registration and driver license databases.  A.R.S. Sec. 16-165(F) does not explain how often the databases are maintained, how the Secretary of State makes the determination that a person is not a United States citizen, and how to appeal an erroneous entry in the databases.  A.R.S. Sec. 16-165(F) is designed to target U.S. citizens who have naturalized since their last Arizona driver license renewal, and subject them to onerous verification requirements or purge from the voter rolls.

69.     Arizona's driver license-related data do not provide a reliable source of information regarding a licensee's citizenship status.  In Arizona, under A.R.S. § 28-3171, a driver license is valid until the applicant's sixty-fifth birthday,[24] meaning when an Arizona resident with a valid driver license becomes a U.S. citizen, Arizona's driver license database no longer accurately reflects that resident's citizenship status because there is no requirement to renew a driver license every few years, except for the requirement that licensees update their photograph every twelve years.  Consequently, A.R.S. Sec. 16-165(F) will create a disparate impact on naturalized U.S. citizen Latinos whose Arizona driver license database information is out of date once they become U.S. citizens.  Because a significant number of U.S. citizens who naturalized in the last ten years are originally from Latin American counties, this provision will discriminate against Latinos disproportionally based on race and national origin.

70.     A.R.S. Sec. 16-165(G) requires the county recorder each month, and to the extent practicable, to compare the county's voter registration database to the Social Security Administration database.  Here, 16-165(G) is discriminatory because it will disproportionally affect Latinos who often have hyphenated or misspelled surnames, which often do not match in different databases, and subject them to onerous verification requirements.  A.R.S. Sec. 16-165(G) also fails to explain the purpose of comparing the

---

[24] Arizona Revised Statutes Section 28-3171, https://www.azleg.gov/viewdocument/?docName=https://www.azleg.gov/ars/28/03171.htm.

COMPLAINT

county's voter registration database to the Social Security Administration database, and it is unclear whether a county recorder has access to the Social Security Administration database.

71.     A.R.S. Sec. 16-165(H) requires the county recorder, each month and to the extent practicable, to compare persons who are registered to vote in that county and who the county recorder "has reason to believe are not United States citizens" and persons who are registered to vote without satisfactory evidence of citizenship with the Systematic Alien Verification for Entitlements (SAVE) Program maintained by United States Citizenship and Immigration Services ("USCIS") to verify the person's citizenship status.  Here, A.R.S. Sec. 16-165(H) is vague regarding how county recorders will receive information that a person is not a United States citizen, how to confirm such information, and what information establishes that a person is not a United States citizen.  A.R.S. Sec. 16-165(H) is designed to target naturalized citizens, U.S. citizens born abroad who derived citizenship from U.S. citizen parents, native-born Latino U.S. citizens, and children who became U.S. citizens through a parent's naturalization and, based on the subjective decisions of the county recorder, subject them to onerous verification requirements or purge from the voter rolls.

72.     The SAVE program is an electronic, fee-based system operated by USCIS to verify that a person has the immigration status his or her documents indicate or that the immigration information he or she has provided is accurate for government benefits and licensing agencies or other lawful purposes.  The SAVE program has traditionally been used as a support system for verifying eligibility for benefits or services at the time an application is initially filed.  However, it is not a list of all non-citizens in the United States and would not necessarily enable a county recorder to identify every naturalized U.S. citizen residing in Arizona.

73.     For example, on June 11, 2012, the Department of Justice sent a letter to the Florida Secretary of State, Ken Detzner, advising him that Florida's program of citizenship

verification through the SAVE program would violate the Voting Rights Act and the National Voter Registration Act.[25]  The Department of Justice explained that the "SAVE program relies on [Department of Homeland Security] records, which do not include a comprehensive and definitive listing of U.S. citizens" and "does not allow verification based on name and/or date of birth alone" but requires "unique identifiers, such as registration numbers or certificate numbers found on immigration-related documents[.]"[26]

74.     Additionally, there is a risk that a county recorder could mistake a native-born U.S. citizen's identity for that of a non-citizen found in the SAVE Program, causing that U.S. citizen to be sent a notice under the Arizona voter registration cancellation provision.  This creates a particular risk for Latino U.S. citizens who have Spanish surnames, which are more likely to match the names of a non-citizen from a Latin American country.

75.     Therefore, the methodology for the use of the SAVE program for voter registration verification that is set forth in A.R.S. Sec. 16-165(H) discriminates based on race and national origin by targeting a disproportionately large number of foreign-born U.S. citizens.

76.     A.R.S. Sec. 16-165(I) requires, for persons who are registered to vote without satisfactory evidence of citizenship, the county recorder to compare the Electronic Verification of Vital Events System maintained by the National Association for Public Health Statistic and Information System, if accessible, with the information on the person's voter registration file.  Here, A.R.S. Sec. 16-165(I) is designed to target U.S. citizens who registered to vote via the Federal Form and U.S. naturalized citizens, and therefore discriminates based on race and national origin by targeting a disproportionately large

---

[25] DOJ Letter to Ken Detzner (June 11, 2012), https://www.documentcloud.org/documents/805150-us-dep-of-justice-save-letter-1.html.
[26] *Id.*

COMPLAINT

number of foreign-born U.S. citizens and subjecting them to onerous verification requirements or purge from the voter rolls.

77.     A.R.S. Sec. 16-165(J) requires the county recorder, to the extent practicable, to review relevant city, town, county, state, and federal databases to which the county recorder has access to confirm information obtained that requires cancellations of registrations.  Here, A.R.S. Sec. 16-165(J) is designed to target U.S. citizens who have registered to vote and have moved into Arizona and U.S. citizens who have naturalized since their last driver license renewal, and subject them to onerous verification requirements or purge from the voter rolls.  Subsection (J) also does not specify which types of databases a county recorder should review.

78.     In sum, H.B. 2243 provides that the county recorder may cancel a voter registration and purge registered voters from the voter rolls if the county recorder determines that the registered voter is not a resident or United States citizen.  Because the county recorder must compare prescribed databases every month, new and already registered voters would be deemed ineligible to vote in any upcoming elections at any given time.  In other words, the creation of lists of voters every month and cancellation of voter registration under the amended provisions of A.R.S. Sec. 16-165 will result in removal of names within 90 days of federal elections, in violation of Section 8 of the NVRA.  *See* 52 U.S.C. § 20507(c)(2)(A).

79.     H.B. 2243 provides that when the county recorder cancels a voter registration, the County Attorney and Attorney General may initiate an investigation into potential voters to determine their citizenship status.  Consequently, H.B. 2243 creates a chilling effect on potential voters to register to vote, or to reapply to register to vote, especially voters with limited English proficiency, naturalized citizens, and Latino citizens.

80.     Plaintiffs PAZ and SVREP have expended their limited and valuable organizational resources informing new and already registered voters of the possibility of voter purges as an attempt to prevent H.B. 2243 from blocking qualified voters from voting.

Plaintiffs have been injured by the causes of cancellation and voter purge provisions of H.B. 2243 because their resources are drained by the effort to assist voters in understanding and navigating registration cancellations and voter purges.

81.     Plaintiff PAZ's members include Latino registered voters, some of whom have limited English proficiency and/or have limited formal schooling and limited literacy. Plaintiff PAZ's members include Latino voters who require and need assistance to register to vote because of limited ability to read or write in English.  These members need assistance to navigate the registration process, finding the polling place, understanding how to mark and cast a ballot, and following-up with any other requirements imposed by H.B. 2243.  Further, Plaintiff PAZ's members have chosen PAZ to assist them to vote by mail, including assisting registered voters with reading, interpreting, completing, and returning the application for ballot by mail and mail ballot.

82.     H.B. 2243 will force Plaintiffs PAZ and SVREP to divert their resources away from voter registration and community education activities, which are central to their missions, in order to increase the number of Latino voters.  Consequently, Plaintiffs have expended their resources to assist Latino voters to navigate the byzantine and unclear requirements of H.B. 2243.

83.     Moreover, H.B. 2243 directly undermines Plaintiffs' missions by preventing Latino voters from registering and removing registered voters from the voter rolls; in effect, H.B. 2243 negates Plaintiffs' voter registration efforts by jeopardizing years of previous voter registrations and the encouragement Latino citizens to register to vote and exercise their civic duty by voting on election day.  H.B. 2243 will frustrate the missions of Plaintiffs by chilling Latino citizens from registering to vote, based on the threat of prosecution, and removal from the voter rolls because of missing documentation or difficulty matching information from governmental databases.  Plaintiffs will be required to divert resources to retrain staff, prepare new educational materials, recruit, train and manage new

1  volunteers, and conduct community outreach to comply with H.B. 2243's new restrictions
2  and requirements for remaining on the voter rolls.

3       84.    Plaintiffs have in the past, and will in the future, encourage civic education
4  and participation among its members and in the communities they serve.  Plaintiffs' voter
5  engagement activities include registering eligible voters, hosting volunteer trainings,
6  proving written and online resources about in-person and mail voting, holding events to
7  encourage community members to vote, organizing transportation to the polls for
8  registered voters, and assisting on any other matters.

9       85.    H.B. 2243 will force Plaintiffs to divert their resources away from their voter
10  registration and civic participation activities, which are central to their missions, in order
11  to counteract the negative effects of H.B. 2243 on the community members and voters that
12  Plaintiffs serve.  Plaintiffs have conducted in the past, and will conduct in the future,
13  outreach activities aimed at Latino voters with low turnout.  Plaintiffs have employed
14  canvassers to contact voters in person at their homes, educate Latino voters about
15  upcoming elections, urge voters to vote, and encourage and offer assistance to Latino U.S.
16  citizens to register and learn about the requirements of registration.

17       86.    Without these causes of cancellations and voter removal provisions imposed
18  by H.B. 2243, Plaintiffs would have the ability to use its limited resources in reaching out
19  to more voters through their voter registration and participation efforts.

20       87.    Upon information and belief, Defendants are implementing the causes of
21  cancellation and voter purges set forth in Section 2 of H.B. 2243.

22  

**FIRST CAUSE OF ACTION**
**Violation of the First and Fourteenth Amendments**
**U.S. Const. Amend., I and XIV; 42 U.S.C. § 1983**
**(Undue Burden on the Right to Vote)**

25       88.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth
26  here.

89.     The provisions of H.B. 2243 place an undue burden on the ability of Plaintiffs, including Latino voters, to participate in elections and cast a ballot that will count, in violation of the First and Fourteenth Amendments.

90.     The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution provides that "[n]o State shall [. . .] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.

91.     The First Amendment of the U.S. Constitution, which is applicable to the States through the Fourteenth Amendment prohibits "abridging the freedom of speech." The First Amendment protects the right of citizens to vote for the candidate of their choice.

92.     The "political franchise of voting" has long been held to be a "fundamental political right, because [it is] preservative of all rights."  *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966) (citation omitted).

93.     "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiffs' rights.'"  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

94.     State election administration practices may not burden the right to vote unless relevant and legitimate state interests of sufficient weight necessarily justify the magnitude and character of the burden imposed.  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (holding "[h]owever slight th[e] burden may appear [. . .] it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation.") (internal citation and quotation marks omitted).  The more a challenged law burdens the right to vote, the more strictly it must be scrutinized.  Burdens, no matter how

slight, must be justified by valid state interests of sufficient weight. *Veasey v. Perry*, 71 F. Supp. 3d 627, 691 (S.D. Tex. 2014).

95.   When a state election law severely burdens the right to vote or is discriminatory, a court must find that it is "narrowly drawn to advance a state interest of compelling importance" in order to survive constitutional muster. *Burdick*, 504 U.S. at 434 (citation omitted); *see also Norman v. Reed*, 502 U.S. 279, 280 (1992).

96.   Importantly, "laws that govern the political process surrounding elections—and, in particular, election-related speech and association—go beyond merely the intersection between voting rights and election administration, veering instead into the law area 'the First Amendment has its fullest and most urgent application.'" *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 722 (M.D. Tenn. 2019) (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)).

97.   H.B. 2243's challenged provisions, which include the combined causes of cancellations and voter purges, erect substantial barriers to voting for Arizona's Latino and naturalized U.S. citizen voters.   These provisions present a substantial burden to these voters in violation of the First and Fourteenth Amendments.

98.   Plaintiffs challenge Section 2 of H.B. 2243 as establishing an undue burden on the right to vote in violation of the First and Fourteenth Amendment to the U.S. Constitution.

99.   The burdens imposed by the challenged provisions of H.B. 2243 individually and collectively on eligible Arizona voters' fundamental right to vote, including on Plaintiffs and members of Plaintiff PAZ, are severe and neither justified by nor necessary to promote any legitimate interest of the State that was not already adequately protected by pre-existing election procedures.

100.   Even if reducing voter fraud was the true motivation for H.B. 2243, and it is not, there is no evidence that H.B. 2243 will address voter fraud, or that there were allegedly registered voters in 2020 contributed to any alleged fraud within Arizona.

101.    Arizona's interest in the causes of cancellations and voter purges enacted by H.B. 2243 are neither narrowly tailored nor sufficiently compelling to justify the severe burden imposed on the rights of organizational Plaintiffs or individual voters.    The provisions imposed by this law are arbitrary, lack rational justification, and violate the First Amendment.

102.    The challenged provisions of H.B. 2243 irreparably harm Arizona voters, particularly Latino and naturalized U.S. citizen voters.

103.    The challenged provisions also irreparably harm the organizational Plaintiffs by forcing them to divert finite resources from their regular registration and educational activities to educating Latino and naturalized U.S. citizen voters about the new and onerous causes of cancellation and removal from the voter rolls imposed by H.B. 2243 and helping them avoid cancellation of voter registration.

104.    Accordingly, Plaintiffs are entitled to a declaration that Section 2 of H.B. 2243 is unconstitutional and an order permanently enjoining their enforcement.

**SECOND CAUSE OF ACTION**
**Violation of the Fourteenth Amendment**
**U.S. Const. Amend., XIV; 42 U.S.C. § 1983**
**(Race or National Origin Discrimination)**

105.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

106.    Section 1983 authorizes suits resulting from the deprivation of a right secured by the Constitution or the laws of the United States by a person acting under the color of state law.

107.    Section 1 of the Fourteenth Amendment to the United States Constitution provides that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

108.     Classifications based on alienage, nationality, or race are inherently suspect and subject to strict scrutiny.  *Graham v. Richardson*, 403 U.S. 365, 372 (1971); *see City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

109.     When the government classifies persons based on race or national origin, a plaintiff does not need to make an extrinsic showing of discriminatory animus or discriminatory effect to trigger strict scrutiny.  *Mitchell v. Washington*, 818 F.3d 436, 445–46 (9th Cir. 2016); *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) ("Classifications based on race or national origin, such as those alleged here, are subject to strict scrutiny."); *Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1162 (W.D. Wash. 2019) ("Government action that distinguishes among citizens on the basis of national origin is inherently suspect and subject to 'strict scrutiny.'").

110.     The right to vote is a fundamental constitutional right protected by the due process and equal protection clauses of the Fourteenth Amendment.  *See Bush v. Gore*, 531 U.S. 98; 104–05 (2000); *Anderson v. Celebrezze*, 460 U.S. 780, 786–87 (1983); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966).

111.     A law or policy is unconstitutional under the equal protection clause when race was a motivating factor in the decision-making process that led to the law or policy. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

112.     H.B. 2243 violates the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983, because it was purposefully enacted and operates to deny, abridge, or suppress the right to vote of eligible voters based on race or national origin.

113.     The challenged provisions were adopted, individually and collectively, for the purpose of denying Latino voters full and equal access to the political process.

114.     H.B. 2243 was enacted in response to claims of widespread voter fraud during the 2020 elections and a time that the population of Latino voters had increased in

statewide elections, as well as a time when Latino voters were making increasing use of voting to exercise their voice that are now being eliminated by H.B. 2243.

115.   The purported justifications for H.B. 2243 were pretextual.

116.   The legislative process leading up to the enactment of H.B. 2243 included departures from normal procedures and ability to comment.

117.   Implementing and enforcing H.B. 2243 will irreparably harm Plaintiffs, as well as Latino voters by denying or abridging their right to vote.

118.   Arizona's long history and record of racial discrimination in voting, the reasonably foreseeable discriminatory impact of H.B. 2243, departures from the normal legislative process, baseless claims of voter fraud, and the tenuousness justifications for H.B. 2243 provide a strong inference of a discriminatory purpose in violation of the Fourteenth Amendment.

119.   Following the 2020 elections, Arizona elected officials and candidates made racially charged comments about widespread voter fraud in Arizona caused by illegal alien voters, as well as unfounded allegations that Former President Trump won the 2020 Presidential Election.

120.   Furthermore, Arizona candidates for elected office have promised to decertify the 2020 election results and to impose stricter requirements to preserve election integrity, which would unevenly impact the Latino community.  H.B. 2243 represents the Arizona legislature's response to unfounded allegations of widespread voter fraud, particularly the racially charged notion that illegal aliens were registered to vote to swing the results of the 2020 Presidential Election.

121.   Defendants, acting under color of state law, have deprived and, absent an injunction, will continue to deprive Plaintiffs of their rights secured by the Fourteenth Amendment to the U.S. Constitution, and Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law.

122.   Accordingly, Plaintiffs are entitled to a declaration that Section 2 of H.B. 2243 is unconstitutional and an order permanently enjoining their enforcement.

**THIRD CAUSE OF ACTION**
**Violation of the Fourteenth Amendment**
**U.S. Const. Amend., XIV; 42 U.S.C. § 1983**
**(National Origin or Alienage Discrimination)**

123.   Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

124.   Section 1983 authorizes suits resulting from the deprivation of a right secured by the Constitution or the laws of the United States by a person acting under the color of state law.

125.   Section 1 of the Fourteenth Amendment to the United States Constitution provides that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

126.   "[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny.  Aliens as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Graham*, 403 U.S. at 372 (internal citation omitted).

127.   When the government classifies persons based on race or national origin, a plaintiff does not need to make an extrinsic showing of discriminatory animus or discriminatory effect to trigger strict scrutiny.  *Mitchell*, 818 F.3d at 445–46; *see also Freeman*, 68 F.3d at 1187 ("Classifications based on race or national origin, such as those alleged here, are subject to strict scrutiny."); *Tiwari*, 363 F. Supp. 3d at 1162 ("Government action that distinguishes among citizens on the basis of national origin is inherently suspect and subject to 'strict scrutiny.'").

- 31 -

128.    "[A]lienage discrimination is discrimination on the basis of citizenship, not immigrant status.  Discrimination on the basis of a person's status as an immigrant to the United States is not alienage discrimination unless it is also motivated by the lack of U.S. citizenship." *Vaughn v. City of New York*, 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010).

129.    H.B. 2243 discriminates against naturalized U.S. citizens, a significant percentage of whom are Latino, in the State of Arizona.

130.    A.R.S. Sec. 16-165(H) provides that the county recorder will compare persons registered to the SAVE Program.  However, only those who immigrated to the United States will be listed in the SAVE Program.  Subsection (H) targets naturalized U.S. citizens, U.S. citizens born abroad who derived citizenship from U.S. citizen parents, native-born Latino U.S. citizens, and children who became U.S. citizens through a parent's naturalization.

131.    A.R.S. Sec. 16-165(F) provides that the Secretary of State will compare the statewide voter registration database to the driver license database maintained by the Arizona Department of Transportation.  The Secretary of State must further notify the appropriate county recorder is a person registered to vote in that county is not a United States citizen.  However, Arizona's driver license-related data do not provide a reliable source of information regarding a licensee's citizenship status.  When an Arizona resident with a valid driver license becomes a U.S. citizen, Arizona's driver license database no longer accurately reflects that resident's citizenship status. Subsection (F) targets naturalized Latino citizens whose Arizona driver license database information is out of date when they become U.S. citizens.

132.    The provisions of H.B. 2243 provide that the county recorder will verify information across varied governmental databases and reject a voter's registration if the county recorder cannot confirm a voter's citizenship status through such databases.

133.    H.B. 2243 treats Latino naturalized U.S. citizens as non-citizens, based on their former alienage, when the county recorder has a suspicion that a naturalized applicant is not a U.S. citizen because of their hyphenated or accented surname, outdated driver license information, or any other subjective criteria.

134.    Implementing and enforcing H.B. 2243 will irreparably harm Plaintiffs, as well as discriminate against Latino voters based on race, national origin, and alienage.

135.    Defendants, acting under color of state law, have deprived and, absent an injunction, will continue to deprive voters of their rights secured by the Fourteenth Amendment to the U.S. Constitution, and Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law through harm to their community and frustration of mission.

136.    Accordingly, Plaintiffs are entitled to a declaration that Section 2 of H.B. 2243 is unconstitutional and an order permanently enjoining its enforcement.

## FOURTH CAUSE OF ACTION
**Violation of the Fourteenth Amendment**
**U.S. Const. Amend., XIV; 42 U.S.C. § 1983**
**(Void for Vagueness; Denial of Due Process)**

137.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

138.    The Due Process Clause of the of the Fourteenth Amendment to the U.S. Constitution prohibits the State of Arizona from "depriv[ing] any person in life, liberty, or property without due process of law."  U.S. Const. Amend. XIV, § 1.

> Due process claims require two inquiries: (1) "whether there exists a liberty to property interest which has been interfered with by the State" and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Vague laws that invite arbitrary enforcement also violate the Due Process clause because "[a] vague law impermissibly delegates basic policy matters to policeman, judges, and juries, and juries for resolution on an ad hoc and subjective basis . . ." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

- 33 -

139.     Section 16-165(A)(10) of the Arizona Revised Statutes, as amended by H.B. 2243 section 2, states that when the county recorder cancels a voter registration, the County Attorney and Attorney General can open a criminal investigation to determine whether the registrant is not a United States citizen.  This provision creates a criminal penalty; the statute specifies that a registration cancellation can lead to an investigation by the County Attorney and Attorney General.  Similarly, A.R.S. Sec. 16-165(H) states that, when the county recorder "has reasons to believe" that a person is not a United States citizen, the county recorder will compare that person's information with the SAVE Program. Subsections (A)(10) and (H) are impermissibly vague because it does not provide an election official any guidance to determine whether a person is not a United States citizen; moreover, Subsection (A)(10) provides a registrant less than 35 days to respond in order to avoid a voter cancellation and subsequent investigation.

140.     Section 2 of H.B. 2243 applies retroactively to registered voters.  Millions of registered voters will be affected by the new causes of cancellation provisions, meaning that registered voters will receive notices informing them that they have to provide proof of Arizona residency or satisfactory evidence of citizenship during the short response period of 35 days, or risk being removed from the voter rolls.

141.     Defendants, acting under color of state law, have deprived and, absent an injunction, will continue to deprive Plaintiff PAZ's members of their rights secured by the Fourteenth Amendment to the U.S. Constitution, and Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law.

142.     Accordingly, Plaintiffs are entitled to a declaration that Section 2 of H.B. 2243 is unconstitutional and an order permanently enjoining its enforcement.

### FIFTH CAUSE OF ACTION
**Violation of the Fifteenth Amendment**
**U.S. Const. Amend., XV; 42 U.S.C. § 1983**
**(Intentional Race Discrimination in Voting)**

- 34 -

143.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

144.    The Fifteenth Amendment prohibits intentional racial discrimination by state actors.  Section 1 of the Fifteenth Amendment to the United States Constitution prohibits states from "abridg[ing]" the "right of citizens of the United States to vote [. . .] on account of race, color, or previous condition of servitude."

145.    The Fifteenth Amendment therefore prohibits voting laws that "handicap exercise of the franchise" on account of race because the Amendment "nullifies sophisticated as well as simple-minded modes of [racial] discrimination." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 184 (5th Cir. 2020) (quoting *Lane v. Wilson*, 307 U.S. 268, 275 (1939)).

146.    The challenged provisions of H.B. 2243 violate the Fifteenth Amendment to the Constitution of the United States because Defendants intentionally enacted and administer, enforce, and implement the laws to deny, abridge, or suppress the right to vote, Latino voters based on race and ethnic origin.

147.    The challenged provisions were adopted, individually and collectively, to deny, abridge, or suppress intentionally the right to vote to Plaintiffs and Latino voters based on race and ethnic origin.

148.    The facts alleged here reveal that H.B. 2243 was enacted, at least in part, with a racially discriminatory intent to discriminate against Latino voters in violation of the United States Constitution.

149.    Defendants, acting under color of state law, have deprived and, absent an injunction, will continue to deprive Plaintiffs of their rights secured by the Fourteenth Amendment to the U.S. Constitution, and Plaintiff will suffer irreparable harm for which there is no adequate remedy at law.

150.    Accordingly, Plaintiffs are entitled to a declaration that Section 2 of H.B. 2243 is unconstitutional and an order permanently enjoining its enforcement.

COMPLAINT

**SIXTH CAUSE OF ACTION**
**Violation of Section 8 of the National Voter Registration Act of 1993**
**42 U.S.C. § 1973gg, et seq.**
**(Purging of Voter Rolls)**

151.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

152.    Section 8 of the National Voter Registration Act of 1993 provides that "each State shall […] provide that the name of a registrant may not be removed from the official list of eligible voters" unless certain prerequisites are met: (1) "at the request of the registrant;" (2) "as provided by State law, by reason of criminal conviction or mental capacity;" (3) "death of a registrant;" or (4) "a change in the residence of the registrant." *See* 52 U.S.C. § 20507(a)(3)–(4) (formerly 42 U.S.C. § 1973gg-6).

153.    Section 8 also addresses a state's removal of individuals from a state voter rolls:

> Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office—
>
> (1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights of 1965 (42 U.S.C. §1973 et seq.); and
>
> (2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote, except nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsection (c) and (d)[.]

52 U.S.C. § 20507(b)(1)–(2).

154.    According to the legislative history, Section 8 intends "to impose the uniform, nondiscriminatory and conforming with the Voting Rights Act standards on any activity that is used to start, or has the effect of starting, a purge of the voter rolls, without regard to how it is described or to whether it also may have some other purpose." S. REP. No. 103-6, 103rd Cong., at 31 (1993).

- 36 -

155.    Section 2 of H.B. 2243 violates the NVRA.  Section 8 provides that a registrant cannot be removed, unless the registrant's requests removal, it is allowed under State law based on criminal conviction or mental incapacity, death of the registrant, or change of the registrant's address.  H.B. 2243 contravenes the clear language and purpose of Section 8 by removing registered voters because they have a driver license or equivalent from another state.

156.    H.B. 2243 also violates the uniform and nondiscriminatory requirements of Section 8.  Any removal of registered voters from the voter rolls must not be based on specific criteria that targets registered voters on racial grounds.  As mentioned, H.B. 2243 targets Latino voters, especially naturalized U.S. citizens, through skewed application of the SAVE Program, use of driver license data, and subjective discretion of the county recorder to decide whether a registrant may not be a United States citizen.

157.    Furthermore, because the county recorder must compare prescribed databases every month, new and already registered voters would be deemed ineligible to vote in any upcoming elections at any given time.  As such, the creation of lists of voters every month and cancellation of voter registration under the amended provisions of A.R.S. Sec. 16-165 will result in removal of names within 90 days of federal elections, in violation of Section 8 of the NVRA.  *See* 52 U.S.C. § 20507(c)(2)(A).

158.    Accordingly, Plaintiffs are entitled to a declaration that Section 2 of H.B. 2243 violates their rights under the NVRA and an order permanently enjoining its enforcement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

i.      Issue a declaration that Section 2 of H.B. 2243 is unconstitutional and illegal under the Voting Rights Act and the National Voter Registration Act and of no force or effect;

ii.     Enter an order enjoining Defendants, their agents and succession in office, from implementing Section 2 or any subpart thereof of H.B. 2243;

iii.    Enter an order requiring Defendants to immediately restore the voter registration of individuals improperly removed from the voter rolls under the provisions of Section 2 of H.B 2243;

iv.    Enter an order requiring Defendants to publicize effectively the remedial plans and programs to restore voter registration as ordered by the Court to ensure widespread dissemination to State of Arizona residents, among others, for those who, at the time of the Court's order, may have been improperly removed from the voter rolls as required by Section 2 of H.B. 2243;

v.     Award Plaintiffs' attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, 52 U.S.C. § 20510(c), and 52 U.S.C. § 10310(e);

vi.    Grant such other and further relief as may be deemed just and proper; and

vii.   Maintain jurisdiction over this action.

Dated: September 20, 2022

Respectfully submitted,                        MEXICAN AMERICAN LEGAL
                                               DEFENSE AND EDUCATIONAL FUND

                                               /s/Ernest Herrera
                                               _____
                                               Ernest Herrera
                                               Luis L. Lozada
                                               MEXICAN AMERICAN LEGAL
                                               DEFENSE AND EDUCATIONAL FUND

                                               Daniel R. Ortega Jr.
                                               ORTEGA LAW FIRM

                                               *Attorneys for Plaintiffs*

COMPLAINT